## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 2:24-cv-00639-VBF-KES                    Date: May 9, 2024

Title: DONNELL G. HADDOCK v. SHERIFF LUNA

PRESENT:

### THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|:---:|:---:|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|:---:|:---:|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**   **Order Dismissing Complaint (Dkt. 1) Without Prejudice and With Leave to Amend**

On December 18, 2023, Donnell G. Haddock ("Haddock") constructively[1] filed a pro se civil rights complaint. ("Complaint" at Dkt. 1.) On March 29, 2024, the District Judge granted his request to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915(a)(1). (Dkt. 6.)

The IFP statute requires courts to "dismiss the case at any time if the court determines that" the case is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). The Court has reviewed the Complaint and, for the reasons explained below, finds that it fails to state a claim. The Complaint is therefore **dismissed without prejudice and with leave to amend**.

---

[1] According to Haddock, he is a detainee who was found incompetent to stand trial. See Haddock v. Newsom, No. 2:23-cv-08679-VBK, KES, Dkt. 9, 11. He signed the Complaint on December 18, 2024. (Dkt. 1 at 14.) Under the prison mailbox rule, filings from pro se prisoners are generally deemed constructively filed on the date they are signed. See Hernandez v. Spearman, 764 F. 3d 1071, 1074 (9th Cir. 2014); Wolff v. California, 235 F. Supp. 3d 1127, 1129 n.1 (C.D. Cal. 2017).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                          Date: May 9, 2024
                                                                        Page 2

## I.    LEGAL STANDARD

A complaint may fail to state a claim for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (as amended).  In determining whether a complaint states a claim, the court assumes that the facts alleged in the complaint are true and interprets those facts in the light most favorable to plaintiff.  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  Further, where the plaintiff is appearing pro se, the court must interpret the complaint liberally and give the plaintiff the benefit of any doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  However, the liberal pleading standard only applies to a plaintiff's factual allegations.  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Moreover, with respect to a plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. … Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (internal citation and quotation marks omitted).

Although the scope of review generally is limited to the contents of the complaint, the court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).  Exhibits that contradict the allegations of a complaint may fatally undermine those allegations.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by 275 F.3d 1187 (2001) (noting that a plaintiff can "plead himself out of a claim by including … details contrary to his claims").

If the court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).  Where the plaintiff is pro se, leave to amend should be granted, "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts."  Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir, 1995).  However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the court may dismiss

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                Date: May 9, 2024
                                                                                 Page 3

without leave to amend.  <u>Cato</u>, 70 F.3d at 1005-06; <u>see</u>, <u>e.g.</u>, <u>Chaset v. Fleer/Skybox Int'l</u>, 300
F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by
permitting further amendment" where the "basic flaw" in the pleading cannot be cured by
amendment); <u>Lipton v. Pathogenesis Corp.</u>, 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that
"[b]ecause any amendment would be futile, there was no need to prolong the litigation by
permitting further amendment").

## II.    SUMMARY OF ALLEGATIONS IN THE COMPLAINT

### A.    <u>Defendants and Legal Theories</u>

The only Defendant named in the Complaint is L.A. County Sheriff Robert Luna, who is
named in both his individual and official capacities.  (Compl. at 4 ¶ 17.)[2]

The Complaint seeks monetary damages and declaratory relief, as well as an injunction
"keeping Haddock out of the Los Angeles County Jail system care" and directing jail authorities
to do "a full physical" examination of Haddock.  (<u>Id.</u> at 13.)[3]

The Complaint states, "This is a civil right[s] action authorized by 42 U.S.C. section
12133 to redress the deprivation, under color of the United States, over [sic] deliberate
indifference, campaign of harassment, discrimination[,] retaliation, racial profiling, targeting
peonage [sic], due process, cruel and unusual punishment[,] excessive force, illegal wiretap,
misprison of felony [sic], and equal protection."  (<u>Id.</u> at 1-2 ¶ 1.)

### B.    <u>Factual Allegations</u>

The Complaint is vague as to the timeframe of many of the events described therein.  The
L.A. County Sheriff's Department ("LASD") Inmate Information Center[4] shows that Haddock
was arrested at least 16 times between June 2022 and March 2024.  As best the Court can
determine, the Complaint alleges the following:

---

[2] Defendant Luna is the only Defendant listed in the caption and "Defendants" section of
the Complaint.  (Compl. at 4.)  The "Factual Allegations" section of the Complaint refers to
other people as "Defendants."  (<u>Id.</u> at 7 ¶ 27 ("Defendant psychiatrist Graciano"); <u>Id.</u> at 8, 10
¶ 32 ( "Defendant Sheriff Deputy Conner".)  If Haddock is attempting to bring claims against
these other parties, he must file a First Amended Complaint that clearly indicates that they are
being named as Defendants.

[3] When quoting from Haddock's <u>pro se</u> filings, the Court has corrected scrivener's errors
where Haddock's meaning is clear.

[4] The Court takes judicial notice of these records, which are available online at:
https://app5.lasd.org/iic/ (last accessed May 6, 2024).  <u>See</u> Fed. R. Evid. 201; <u>Harris v. Cty. of
Orange</u>, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts "may take judicial notice of undisputed
matters of public record").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                      Date: May 9, 2024
                                                                    Page 4

### 1.      Arrest in January 2018

     Haddock was arrested by the Pomona Police Department.  (Compl. at 4 ¶ 18.)  It appears he was arrested on the Cal Poly Pomona campus.  (Id. at 5 ¶ 22 (asking the Court to review "video footage of [Haddock] at Cal Poly Pomona right before [he] came to jail").)  "There was an officer[] driving while a sergeant … SWAT officer was riding shot gun.  (Id. at 5 ¶ 20.)  Haddock was taken to the L.A. Men's County Jail ("MCJ") and booked under the last name "Hancock."  (Id. at 4 ¶ 18.)

     The same day, he was taken "twice" to "Pomona Valley Hospital.  (Id. at 5 ¶¶ 19, 23.)  It appears he was taken to the hospital for a mental health evaluation under § 5150(a) of the California Welfare and Institutions Code.[5]  (See id. at ¶ 24 (complaining Haddock "never told [the] Pomona Police Department while in custody that [he] was suicidal nor homicidal nor has [he] ever told [the LASD] this"); see also at 6 ¶ 23 (alleging he was taken "in a[n] ambulance to Pomona Valley Hospital from Cal Poly Pomona").)

     It appears that the arrest occurred on or around January 27, 2018, because the Complaint cites "video and audio of [Haddock] 01/27/2018 being booked into Pomona Police Department." (Id. at 7 ¶ 25.)  The Complaint cites "#5216008," which appears to be an LASD booking number, and "SCN #L3410270012," which appears to be a state court case number.[6]

### 2.      Psychiatric Hold and Treatment in 2019

     On or around March 17, 2019, Haddock was at the MCJ again.  (Compl. at 7 ¶ 26.)  This appears to have been the result of a new arrest or arrests (rather than the January 2018 arrest), because the Complaint cites two new LASD booking numbers ("#5575162 and #5955045") and a new state court case number ("SCN: #L34M0760007").  (Compl. at 7 ¶ 26.)[7]

     Haddock alleges that he was "shackle[d] to [a] chair for 3 days which constitute[d] a 5150 hold…."  (Id. at 7 ¶ 26.)  He argues that, after three days, a "psychiatri[st] is suppose[d] to let inmates know by law his right to challenge any decision made on his person before a magistrate judge for mental health…. This did not happen[]."  (Id. at 7 ¶ 26.)  Haddock alleges he was kept on the hold for "about 14 days," which he argues "denied [him] access to the

---

     [5] Section 5150 states, "When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer … may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility…."

     [6] The Court was unable to verify this booking number or state court criminal case on available public dockets (perhaps due to the age of the arrest).

     [7] The Court was unable to verify these booking numbers or state court criminal case on available public dockets (perhaps due to the age of the arrest).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:24-cv-00639-VBF-KES                           Date: May 9, 2024
                                                                                       Page 5

courts." (Id. at 7 ¶ 27.)  Haddock "told Defendant [sic] psychiatri[st] Graciano that he want[ed] to challenge [the] hold placed on his person before a magistrate judge for mental"  health.  (Id. at 7 ¶ 27.)[8]

### 3.   Arrest in March 2023

The Complaint cites "#6557510 video of arrest as well as the owner signing [a] vandalism citation" and "ask[s] the Court[] to review [the] housing assignment sheet from [Haddock's] arrest."  (Compl. at 8-9 ¶ 28.)  The LASD Inmate Information Center shows that Haddock was arrested under that booking number on March 13, 2023, by the El Monte Police Department and released on March 17, 2023.  It is not clear if the Complaint is alleging that some of the incidents discussed in the Complaint took place during this detention, or if so which ones.

On the same page of the Complaint, Haddock alleges that an LASD deputy named Conner "called [Haddock] a snitch because [Haddock] told [Deputy Conner] that [Haddock] was trier [sic, probably tired] of the [LASD] continuously housing [Haddock] around their confidential informants.  So [Haddock] refus[ed] housing and … [LASD] Deputy Conner [committed] discrimination [and] retaliation by placing [Haddock] on suicidal, homicidal watch w[h]ere psychiatrics [sic] took it upon himself [sic] to prescribe psychotropic[] medication against [Haddock's] … will."  (Compl. at 8, 10 ¶ 32.)  It is not clear whether these events occurred in connection with the March 2023 arrest or one of the other arrests discussed in the Complaint.

### 4.   Jail Conditions

The Complaint makes other claims about conditions at the MCJ, but it is not clear when these conditions are alleged to have occurred.  The Complaint alleges that Haddock was placed in a unit or cell that was "wired for sound."  (Compl. at 10 ¶ 32.)  The Complaint also appears to allege that Haddock was unable to shower for 15 days, alleging: "242 D Pod cell #8 w[h]ere Defendant[9] make a lot [of] requests to a show[er] [sic].  Defendant [had] one in 15 days. … Defendant of no fault of Defendant['s] own was to go without until Sheriff decide[d] to turn [the] water on."  (Id. at 10 ¶ 32.)

---

[8] The Complaint says that Haddock "still hasn't seen a magistrate judge."  (Compl. at 7 ¶ 27.)  Presumably this means as of the date the Complaint was signed, December 18, 2023.  (Id. at 13.)  However, public records from L.A. Superior Court case number KA133564-01 (discussed further below) show that Haddock was before a judge in at least October 2023, when a judge referred him for a mental health evaluation.

[9] Haddock appears to be referring to himself as "Defendant" in this paragraph, presumably because he was in custody.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                      Date: May 9, 2024
                                                                     Page 6

### 5.      Competency Proceedings Arising From August 2023 Arrest

The Complaint cites "trial case # KA133564[-]01." (Compl. at 10 ¶ 37.) The online public docket for that Los Angeles Superior Court ("LASC") case[10] shows that Haddock was arrested on August 11, 2023, on charges of robbery and assault with a deadly weapon (not a firearm). Haddock was remanded to custody. On October 11, 2023, the court entered a mental competency referral order.

The Complaint alleges that Haddock was evaluated by two psychiatrists in connection with those court proceedings. (Id. at 10 ¶ 37.) The Complaint raises multiple objections to how those evaluations were conducted, including that the two psychiatrists did not (a) talk directly to Haddock, (b) "ask[] [Haddock] about [the] PC 1370[11] program trial competency study guide," (c) get his "signature saying [he] didn't understand PC 1370," or (d) tell the court that Haddock was not taking any psychotropic medication at the time of the evaluations. (Id. at 11 ¶ 37.) He claims that this "violated [his] due process rights to [a] speedy trial also." (Id.)

The Complaint appears to allege that this hearing resulted in a court order "forc[ing] [Haddock] to [take] psychotropic med[ication]s … orally or by shot." (Id.) The Complaint alleges that this order violated Haddock's "right to bodily integrity," because "officials may not force you to take a drug that is not medically appropriate…." (Id.) He argues that he is not a danger to himself or others and that the treatment is not in his medical interest. (See id. at 13 (asserting that these are the only situations in which "a prison may forcibly treat a seriously mentally ill inmate").)

## III.   PLEADING DEFECTS

### A.      Claims Under the Americans with Disabilities Act ("ADA")

#### 1.      Legal Standard

The Complaint states that it is bringing claims under 42 U.S.C. § 12133, which is part of Title II of the ADA and forbids discrimination on the basis of disability. See Tennessee v. Lane, 541 U.S. 509, 516-17 (2004) (noting that Title II is codified at 42 U.S.C. §§ 12131 through 12134). To state a claim under this statute, the plaintiff must allege that "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated

---

[10] The Court takes judicial notice of the online public docket LASC case number KA133564-01, which is available at: https://www.lacourt.org/onlineservices/ON0001.aspx (last accessed May 6, 2024).

[11] Section 1370 of the California Penal Code establishes procedures for resolving questions of mental competence in state court criminal proceedings and ordering the administration of antipsychotic medication.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                     Date: May 9, 2024
                                                                                          Page 7

against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." <u>Duvall v. Cnty. of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001) (citation omitted), <u>as amended on denial of reh'g</u> (Oct. 11, 2001).

      **2.**      **Analysis**

          a.      Individual Capacity Claims

      "Title II provides for liability only against public entities, which it defines as: '(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority….'" <u>Wilkins-Jones v. Cnty. of Alameda</u>, 859 F. Supp. 2d 1039, 1045 (N.D. Cal. 2012) (quoting 42 U.S.C. § 12131). "Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." <u>Becker v. Oregon</u>, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001); <u>see generally Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. … Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978)).

      The Complaint fails to state a claim against Sheriff Luna in his *individual* capacity, because such claims are not cognizable under Title II of the ADA. Even if Sheriff Luna can be held liable under the ADA in his *official* capacity (because such a claim is the same as a claim against the LASD), the Complaint fails to state an ADA claim against the LASD for other reasons, which are discussed below.

          b.      Nature of Disability

      The ADA defines a disability as: (a) "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (b) "a record of such an impairment"; or (c) "being regarded as having such an impairment." 42 U.S.C. § 12102(1); <u>see also Kula v. Malani</u>, 539 F. Supp. 2d 1263, 1267-68 (D. Haw. 2008). "[W]here … a party alleges that he or she is disabled under the ADA, courts have generally required the party to plead the disability with some factual specificity." <u>Bresaz v. Cnty. of Santa Clara</u>, 136 F. Supp. 3d 1125, 1135-36 (N.D. Cal. 2015). "Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." <u>Wilmarth v. City of Santa Rosa</u>, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996); <u>see, e.g.</u>, <u>Bresaz</u>, 136 F. Supp. 3d at 1136 ("Plaintiffs have cited no authority to suggest that a single episode, suffered by an individual with no diagnosis of mental illness and no history of mental illness, is sufficient to constitute a mental impairment under the ADA.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                      Date: May 9, 2024
                                                                    Page 8

It is not clear what disability Haddock is claiming he has or was regarded as having.  It appears that LASD officials believed Haddock had some sort of mental health condition or disorder, since Haddock alleges he was placed on a mental health hold under § 5150.  It is not clear whether Haddock agrees that he has some history mental health issues, or whether he is claiming they incorrectly regarded him as having a disability.  Moreover, it is not clear whether the condition or disorder would qualify as a disability under Title II of the ADA.

c.    Nature of Discrimination

Generally, a "disability discrimination claim may be based on 'one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" Payan v. Los Angeles Cmty. Coll. Dist., 11 F.4th 729, 738 (9th Cir. 2021) (quoting Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016)).  "[A] reasonable accommodation claim is focused on an accommodation based on an individualized request or need, while a reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to improve systemic accessibility."  Id.

Additionally, the Ninth Circuit has explained:

Courts have recognized at least two types of Title II claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

Sheehan v. City & Cnty. of San Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014) (discussing claim alleging that officers failed to reasonably accommodate the plaintiff's disability "by forcing their way back into her room without taking her mental illness into account and without employing tactics that would have been likely to resolve the situation without injury to herself or others"), rev'd in part, cert. dismissed in part, 575 U.S. 600, 610 (2015) (declining "to decide whether the ADA applies to arrests"); see also Kaur v. City of Lodi, 263 F. Supp. 3d 947, 979 (E.D. Cal. 2017).

It is not clear how Haddock believes that the LASD discriminated against him by reason of his disability or perceived disability.

To the extent he is complaining about the state court proceedings in 2023—by arguing that the psychiatrists did not properly evaluate him and that a court improperly ordered he be given psychotropic medications (see Compl. at 10-11 ¶ 37)—those proceedings were controlled by the state court, not by the LASD.  Thus, the Complaint does not state a claim against the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                    Date: May 9, 2024
                                                                              Page 9

LASD, or Sheriff Luna in his official capacity, based on these facts.

The Complaint also appears to be alleging that, in 2018, 2019, and/or 2023, LASD officials at the MCJ (a) improperly placed Haddock on mental health hold(s) under § 5150, and (b) at least one of those holds was extended beyond the time allowed under § 5150, without Haddock being seen by a judge and given an opportunity to challenge the hold. (See Compl. at 5 ¶¶ 19, 24; id. at 7 ¶¶ 26-27.) These allegations might state a claim under § 1983 if more facts were provided and proper Defendants were named (as discussed further below in Section III.B.3). However, the Complaint does not sufficiently explain how Haddock believes these actions discriminated against him based on his disability or perceived disability. Thus, the Complaint does not state a claim against the LASD, or Sheriff Luna in his official capacity, based on these facts.

**B.     Claims Under § 1983**

In addition to citing § 12133, the Complaint alleges violations of Haddock's constitutional rights. (See Compl. at 1-2 ¶ 1 (alleging "deliberate indifference," "discrimination," "retaliation," "racial profiling," violations of "due process," "cruel and unusual punishment," "excessive force," an "illegal wiretap," and violations of "equal protection" principles). The Court therefore liberally construes the pro se Complaint as bringing claims under 42 U.S.C. § 1983, which is the statute that allows plaintiffs to seek relief against state and local government officials for violations of their constitutional rights.

**1.     Official Capacity Claims Against Sheriff Luna Under § 1983**

a.     Legal Standard

Under § 1983, claims against a public employee in their official capacity are treated as claims against the defendant's employer. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). To state this type of claim, the plaintiff must identify a policy, custom, or practice of the employer and explain how that custom, policy, or practice caused the alleged constitutional violations. Id.; see also Curtis v. City of Gooding, 844 F. Supp. 2d 1101, 1109 (D. Idaho 2012).

Liability may attach when an employee acts pursuant to an "expressly adopted official policy," or where an employee committed a constitutional violation pursuant to a "longstanding practice or custom." Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001); see also Thompson v. Los Angeles, 885 F.2d 1439, 1443-1444 (9th Cir. 1989) ("[P]roof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds by Bull v. City & Cty. of San Francisco, 595 F.3d 964, 981 (9th Cir. 2010).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                               Date: May 9, 2024
                                                            Page 10

        b.      Analysis

The Complaint does not identify any custom, policy, or practice of the LASD that caused the violations of Haddock's constitutional rights. Although he complains about various actions taken by LASD officials—e.g., not turning on the water for Haddock to shower, not taking him before a mental health judge sooner—the Complaint does not allege that these actions were part of a custom, policy, or practice. Accordingly, it does not state a claim against Sheriff Luna in his official capacity under § 1983.

### 2.      Individual Capacity Claims Against Sheriff Luna Under § 1983

        a.      Legal Standard

Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

These actions by a supervisor might include "his own culpable action or inaction in training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011). In other words, supervisory liability attaches under § 1983 "if there exists either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Id. at 1207; see also Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1182-83 (9th Cir. 2007) ("[A] supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them.' … The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms.").

        b.      Analysis

The Complaint does not allege that Sheriff Luna participated in or was aware of the alleged violations of Haddock's constitutional rights. The Complaint appears to name him as a Defendant solely because of his position as the head of the LASD, and the LASD ran the jail in which Haddock was confined. (See Compl. at 4 ¶ 17 (alleging Sheriff Luna "is legally responsible for protecting residents under color of law").) This is insufficient to state a claim against Sheriff Luna in his individual capacity under § 1983.

### 3.      Civil Rights Claims Arising From Detention Under § 5150

The Complaint also appears to be alleging that, in 2018, 2019, and/or 2023, LASD officials at the MCJ (a) improperly placed Haddock on mental health hold(s) under § 5150, and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                    Date: May 9, 2024
                                                                  Page 11

(b) at least one of those holds was extended beyond the time allowed under § 5150, without Haddock being seen by a judge and given an opportunity to challenge the hold.  (See Compl. at 5 ¶¶ 19, 24; id. at 7 ¶¶ 26-27.)  Even if the Complaint had named a proper Defendant for this type of claim, it currently fails to state a claim for other reasons as well.

"Although there are few decisions that discuss the Fourth Amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause."  Maag v. Wessler, 960 F.2d 773, 775 (9th Cir. 1991); see also Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir. 2007) (finding, for purposes of qualified immunity analysis in 5150 claim, the "constitutional right to be free from [mental health] detention without probable cause was clearly established prior to 2002," citing Maag).

California Welfare and Institutions Code section 5150 provides, "When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled, a peace officer ... may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention ...."  Cal. Wel. & Insts. Code § 5150(a).

> Probable cause under … § 5150 exists when facts are known to the officer "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself…." … The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." … "[G]enerally, mental disorder might be exhibited if a person's thought process, as evidenced by words or actions or emotional affect, are bizarre or inappropriate for the circumstances."

Douglas v. City of Los Angeles, No. 20-cv-07439-MEM-FPD, 2023 WL 6528725 at *5, 2023 U.S. Dist. LEXIS 180067 at *14-15 (C.D. Cal. Oct. 3, 2023) (quoting People v. Triplett, 144 Cal. App. 3d 283, 288 (1983) and denying motion for summary judgment on § 1983 due process claim because a reasonable jury could find that the officer defendants did not have probable cause to detain the plaintiff under § 5150); see also Bias, 508 F.3d at 1220.

The Complaint appears to argue that there was no probable cause to place Haddock on a § 5150 hold simply because he never told the police or LASD officials that he was suicidal or homicidal.  (See Compl. at 5 ¶ 24.)  A peace officer could have relied on other facts to determine that Haddock was a danger to himself or others, such as his actions, his demeanor, and other things that he said.  The Complaint does not provide enough facts about each of the incidents to plausibly allege that LASD officials lacked probable cause to detain Haddock under § 5150.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                        Date: May 9, 2024
                                                                      Page 12

## IV.    CONCLUSION

IT IS HEREBY ORDERED that the Complaint (Dkt. 1) is **dismissed without prejudice and with leave to amend**.  On or before **June 7, 2024**, Haddock shall do one of the following:

1.  File a First Amended Complaint that attempts to remedy the defects identified in the Complaint.  If Haddock chooses to file a First Amended Complaint, it should bear the docket number assigned to this case (2:23-cv-09058-VBF-KES), be labeled "First Amended Complaint," and be complete in and of itself without reference to the original Complaint or any other documents (except any documents that are attached to the First Amended Complaint as exhibits).  Generally, for multiple defendants to be properly named in one lawsuit, the claims against them must arise from the same transaction or occurrence.  See Fed. R. Civ. P. 20(a)(2).

2.  If Haddock disagrees with the analysis in this screening order and/or believes he cannot add any more factual allegations to his Complaint, then he may file a "Notice of Intent Not to File an Amended Complaint."  If Haddock chooses to file such a notice, then the Magistrate Judge may recommend that the District Judge dismiss the Complaint without further leave to amend.

3.  File a notice of voluntary dismissal.  Haddock may wish to choose this option if (a) his claims have been mooted by his transfer away from the MCJ, (b) the claims raised in this action have been raised in the other lawsuits he has pending in this court,[12] or (c) he can raise the claims through his appointed counsel in his state court criminal case.

**If Haddock fails to timely respond to this order by exercising one of these options, this action may be dismissed for lack of prosecution.**[13]

---

[12] Haddock v. El Monte Police Dept., 2:23-cv-07589-VBF-KES; Haddock v. Sandovil, 2:23-cv-08608-VBF-KES; Haddock v. Newsom, 2:23-cv-08679-VBF-KES; Haddock v. Allen, 2:23-cv-09032-VBF-KES; Haddock v. Doe, 2:23-cv-09058-VBF-KES; Haddock v. People, 2:23-cv-09576-VBF-KES.

[13] "[A] dismissal with leave to amend is not an appealable decision."  WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  "[A] plaintiff, who has been given leave to amend, may not file a notice of appeal simply because he does not choose to file an amended complaint."  Id.  "A final judgment must be obtained before the case becomes appealable."  Id. at 1137.  "[A] plaintiff may obtain an appealable final judgment by 'fil[ing] in writing a notice of intent not to file an amended complaint.'"  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064 (9th Cir. 2004) (quoting WMX Techs., 104 F.3d at 1135).  If an action is dismissed for lack of prosecution, this may limit what arguments the Ninth Circuit will consider on appeal.  Id. at 1065 ("The difference between a dismissal under Rule 12(b)(6) and one under Rule 41(b) is not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                          Date: May 9, 2024
                                                                                        Page 13

     The Clerk is directed to provide Haddock with a copy of Form CV-066 for filing federal civil rights complaints and the form for a notice of voluntary dismissal.


Initials of Deputy Clerk <u>JD</u>

---

merely formal. … We review a Rule 41(b) dismissal only for abuse of discretion in applying the five factors … which pertain to the propriety of the sanction, not to the merits of the underlying question (such as whether a complaint states a claim). … Yet we review a Rule 12(b)(6) dismissal de novo, reviewing directly the question whether the plaintiff has stated a claim upon which relief could be granted.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                      Date: May 9, 2024
                                                                    Page 14

### TIPS FOR WRITING BETTER COMPLAINTS

**1.      Plead "Facts" Rather than Just "Conclusions or Labels."**

Your Complaint should include a label or conclusion that identifies your legal claim *and* the facts supporting it.  To make sure that you have both, you need to understand the difference between them. The following examples illustrate the difference:

| Pleading Conclusions or Labels | Pleading Facts |
|---|---|
| Officer Smith used excessive force. | Officer Smith punched me in the face while I was handcuffed. |
| Nurse Jones acted with deliberate indifference. | I saw Nurse Jones at the clinic.  I told her I was bleeding and she could see that I was bleeding, but she did nothing to help me until I passed out. |
| The Mayor violated my First Amendment rights. | When I posted a comment criticizing the Mayor's failure to enact police reforms, the Mayor deleted my comment and blocked me from posting future comments. |
| The officers conducted an unreasonable search. | The officers had a warrant to search for a stolen car, but they searched areas of my house where they knew they would not find a stolen car.  They searched all my kitchen cabinets and drawers. |
| Defendant injured me.  Defendant assaulted me. | Defendant kicked me in the shin, causing me to trip and break my wrist. |

Imagine that you hired a group of actors to reenact the wrongdoing that happened to you. If you only gave them the information in left-hand column, then they could not act out the scene. If you gave them the information in the right-hand column, then they would know how to act out the scene.  As a general rule, you should include enough facts in your Complaint that an actor reading it could act out what happened to you.

**2.      Identify Who Did What.**

One way to identify who did what is to avoid using "passive" verbs.  Consider these two sentences, the first of which uses a passive verb:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                          Date: May 9, 2024
                                                                         Page 15

I was hit by the ball.

My brother hit me with the ball.

The first sentence does not say who hit me.  The second sentence, however, reveals that my brother is the person who hit me.  Allegations in a complaint should be phrased like the second sentence.  If you do not know the name of the person who acted wrongfully, then you can refer to them as "Doe."  For example, you might refer to two unknown correctional officers as "CO Doe 1" and "CO Doe 2."

Another way to identify who did what is to use particular a Defendant's name rather than a group pronoun (like "they") or lumping all the Defendants together.  For example:

| **Unclear Who Did What** | **Clear Who Did What** |
| --- | --- |
| Defendants searched my cell and took my property. | CO Smith and CO Jones searched my cell.  When I came back, everything was out of place and my radio was gone.  I believe one of them took it. |
| They refused my request for Kosher meals. | I submitted a request for Kosher meals and was interviewed by the chaplain.  I later received a written denial of my request signed by Sgt. Smith. |
| I was denied necessary medical equipment. | I told Dr. Jones that my feet hurt and requested that she authorize orthotic inserts for my shoes, but she refused to do so. |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-00639-VBF-KES                                    Date: May 9, 2024
                                                                              Page 16

| Free Legal Help for People without an Attorney | | |
|:---:|:---:|:---:|
| **Los Angeles** | **Santa Ana** | **Riverside** |
| *Location:* | *Location:* | *Location:* |
| Edward Roybal R. Federal Building and Courthouse 255 East Temple Street Suite 170 (Terrace Level) Los Angeles, CA 90012 | Ronald Reagan Federal Building and Courthouse 411 W. 4th Street Room 1055 (1st Floor) Santa Ana, CA 92701 | George E. Brown Federal Building 3420 Twelfth Street Room 125 Riverside, CA 92501 |
| *Hours by appointment only:* Monday, Wednesday, and Friday 9:30 am - 12:00 pm and 2:00 pm - 4:00 pm | *Hours:* Tuesday 1-4 p.m. (virtual by phone or Zoom) Thursday 10 a.m.-12 p.m. and 1:30 - 3:30 p.m. (in person at the courthouse) | *Hours:* Tuesday and Thursday 10 a.m. - 2 p.m. |
| To make an appointment or for more information, contact Public Counsel at: (213) 385-2977, Ext. 270 | For more information, contact Public Law Center at: (714) 541-1010, Ext. 222 | For more information, contact Public Service Law Corporation at: (951) 682-7968 |

**Due to the COVID-19 pandemic, the clinics' offices in the federal courthouses may be closed.  Any litigant seeking legal services should contact their local clinic to determine whether the clinic is open, or is offering legal advice via phone or email.**

**Visit the Court's website for further information:**
**http://prose.cacd.uscourts.gov/federal-pro-se-clinics**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONNELL G. HADDOCK, | | CASE NUMBER |
| | Plaintiff(s), | 2:24-cv-00639-VBF-KES |
| v. | | |
| SHERIFF LUNA, | | **NOTICE OF DISMISSAL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 41(a) or (c)** |
| | Defendant(s). | |

PLEASE TAKE NOTICE: *(Check one)*

☐   This **action** is dismissed by the Plaintiff in its entirety.

☐   All claims against the following **Defendant(s)** are dismissed (list Defendant(s)): _____

_____

_____

☐   The following **claims** are dismissed (describe Defendant(s) and legal theory): _____

_____

_____

The dismissal is made pursuant to Fed. R. Civ. P. 41(a) or (c).

_____          _____

*Date*                                                    *Signature of Plaintiff*

*NOTE:  This notice may be filed at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.  Fed. R. Civ. P. 41(a).  The plaintiff may dismiss some or all of the defendants, or some or all of his claims, through a Rule 41(a)(1) notice.  <u>Wilson v. City of San Jose</u>, 111 F.3d 688, 692 (9th Cir. 1997)*

_____
FULL NAME

_____
COMMITTED NAME (if different)

_____
FULL ADDRESS INCLUDING NAME OF INSTITUTION

_____

_____
PRISON NUMBER (if applicable)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PLAINTIFF, | CASE NUMBER<br><br>_____<br>*To be supplied by the Clerk* |
| v. |  |
| DEFENDANT(S). | **CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☐ 42 U.S.C. § 1983<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A.  PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner:  ☐ Yes   ☐ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
   Plaintiff _____

   _____

   Defendants _____

   _____

b. Court _____

   _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it

   appealed?  Is it still pending?) _____

f. Issues raised: _____

   _____

   _____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
   occurred?  ☐ Yes    ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint?  ☐ Yes    ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed?  ☐ Yes    ☐ No

   If your answer is no, explain why not _____

   _____

4. Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff _____
(print plaintiff's name)

who presently resides at _____ ,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_____
(institution/city where violation occurred)

on (date or dates) _____, _____, _____.
                         (Claim I)           (Claim II)          (Claim III)

**NOTE**:    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant _____ resides or works at
             (full name of first defendant)

           _____
             (full address of first defendant)

           _____
             (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual  ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____
    _____

2.  Defendant _____ resides or works at
             (full name of first defendant)

           _____
             (full address of first defendant)

           _____
             (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual  ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____
    _____

3.  Defendant _____ resides or works at
             (full name of first defendant)

           _____
             (full address of first defendant)

           _____
             (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual  ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____
    _____

4.  Defendant _____ resides or works at
                (full name of first defendant)

    _____
    (full address of first defendant)

    _____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both):  ☐ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

5.  Defendant _____ resides or works at
                (full name of first defendant)

    _____
    (full address of first defendant)

    _____
    (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both):  ☐ individual   ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

---

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


_____       _____
            *(Date)*                                  *(Signature of Plaintiff)*